

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 04 2020
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

David J Annarelli
Inmate No: 1853637
Pocahontas State Correction Center
— Plaintiff —

Civil Action No. 7:20CV261

— vs. —

Complaint

Harold W. Clarke, Director, Virginia Department of Corrections
Kevin Punturi, Warden, Pocahontas State Correction Center
Dr. Mullins, MD, Pocahontas State Correction Center
M. Murphy, Psychologist Senior, Pocahontas State Correction Center
S. Yates, Health Authority, Pocahontas State Correction Center
T. Hebfinger, A.D.A coordinator, Pocahontas State Correction Center
C. Smalling, Grievance Coordinator, Pocahontas State Correction Center
K. Crowder, Western Regional Ombudsman
individually & in their official capacities
— Defendants —

## I. Jurisdiction & Venue

1.) This is a civil action authorized by U.S.C 42 section 1983 to redress the deprivation, under the colour of state law, of rights secured by the Constitution of the United States. Specifically, alleging denial of medical care in violation of the Eighth Amendment of the Constitution of the United States, in violation of the due process clause of the fourteenth Amendment to the Constitution. The Court has jurisdiction under 28 U.S.C section 1331(1) & 1343(a)(3). Plaintiff Annarelli seeks declaratory relief pursuant to 28 U.S.C section 2201 & 2202. Plaintiff Annarelli's

(2)

claims for injunctive relief are authorized by 28 U.S.C section 2283 & 2284 & Rule 65 of the Federal Rules of Civil Procedure.

2.) The Western District of Virginia is an appropriate venue under 28 U.S.C section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. Plaintiff

3.) The plaintiff, David J. Annarelli, is & was at all mentioned herein a prisoner of the state of Virginia in the custody of the Virginia Department of Corrections, at Pocahontas State Correction Center (PSCC), during the events described in this complaint

## III. Defendants

4.) Defendant, Harold W. Clarke is the Director of Virginia Department of Corrections (VA DOC) and responsible for the employees and/or contracted employees of the Virginia Department of Corrections, & each institution under its jurisdiction including Pocahontas State Correction Center.

5.) Defendent, Kevin Punturi is the Warden of Pocahontas State Correction Center. He is legally responsible for the operation of PSCC, including the supervision & discipline of all correctional staff on site, as well as the welfare of all the inmates in that prison.

6.) Defendant, Dr. Mullins is faulted with negligence & deliberate indifference as the resident doctor. His awareness of an existing, quite severe, condition,

(3)

of his choice of not scheduling an appointment, including a full medical exam with Dr. Ralph Brown, M.D. & specialized in neuro-trauma supports this claim. Dr. Mullins, during his meeting with Mr. Annarelli, was not interested in discussing a head injury, suffered months prior & addressed through the grievance process. In fact, Dr. Mullins stated "In my 35 years at the Emergency Room I've never heard of behavioral changes or mental health issues because of head injuries." — a statement contrary to all known & current neuroscience. Dr. Mullins went on to silence Mr. Annarelli, have him sign open medical release papers — under protest regarding their unspecified regard — & sent him out. There was, not only a perceived lack of medical knowledge, but also a lack of any interest in the well being of a patient seeking help.

6.) Defendant, M. Murphy, Psychologist Senior, has been aware of Mr. Annarelli's disabilities since his arrival at PSCC & has been asked in person, &, on request for service forms, to contact Dr. Brown, acquire medical records — for which Mr. Annarelli signed release forms months prior to his interactions with Dr. Mullins, requested transfer to medical oriented facilities, i.e. Deerfields, requested aid for his disabilities — all of which are established & documented for some 40 years beginning at age four(4). Mr. Murphy did not provide any support for these requests other than to periodically visit Mr. Annarelli for short periods of time. Mr. Murphy, in fact, lied to to Mr. Annarelli regarding his ability to transfer him to a more suitable facility, stating: "I do not have any say in where you may be transferred, as whether the transfer request made by Counselor Sams is approved." In fact, as per VA DOC operating procedure 730.1, section IV, sub-section 7 & 730.1, section V, subsection 5, which clearly show, Mr. Murphy was able to intervene regarding transfer. Mr. Murphy was also

aware — or should have been aware — that Mr. Annarelli's extensive mental health issues are considered disabilities under the American's with Disabilities Act (A.D.A). Mr. Murphy, having also been made aware of an assault on Mr. Annarelli, January 24 2019, where Mr. Annarelli experienced a blow to the head severe enough to render Mr. Annarelli unconscious, & being aware of a previous head trauma, made no effort to, either have Mr. Annarelli promptly see Dr. Brown, or transfer him to a facility better able to handle Mr. Annarelli's disabilities. As a side to ignoring a previous, & more recent, head injury along with accompanied science that comes with it, Mr. Murphy ignored related symptoms, i.e. an inability to read/understand social cues, & monocular blindness, among other issues, leaving Mr. Annarelli exposed to an heightened risk of harm. All of which constitutes a deliberate indifference

7.) Defendant, Sue Yates, Health Authority, is responsible in part for maintaining the medical department. This includes proper record keeping & coordinating for treatments requested, recommended, & required. To that point, Ms. Yates is negligent in her delayed retrival of medical records pertinant to the well being of Mr. Annarelli. That it took 15 months to put in the paperwork alone, shows a complete lack of concern & a deliberate indifference.

8.) Defendant, T. Heffinger, Institutional Safety Specialist & A.D.A Coordinator, is responsible for providing services & support for those inmates with disabilities. Therefore, also being aware of who is disabled, how they are disabled, & what is required to provide proper care for those inmates who are, in what ever way, disabled.

9.) Defendant, C. Smalling, Grievance Coordinator, is charged with the duty of forwarding grievances to the proper department heads, as relevant to the grievance subject/topic/issue. In fact, it can be seen that this process was hampered by not coordinating among all the afore mentioned department heads. At one point, at least one of the relevant grievances seems to have had its number altered mid-process i.e. # PSCC-19-INF-00436 -to- # PSCC-19-REG-00060.

10.) Defendant, K. Crowder, Regional Ombudsman, is tasked with representing, &/ advocating for, those inmates engaged in pursuing a redress of grievances, through the proper process. It appears quite clearly that she did not, but instead, adopted a path of rubber stamp responses designed to stall the process &/ end it, with out any resolution of note.

11.) Each Defendant is sued individually &/ in his or her official capacity. At all times mentioned in this complaint each defendant acted under the colour of state law.

## IV.  FACTS

12.) December 28 2011, Plaintiff had sustained a brain injury prior to his incarceration. Plaintiff was diagnosed &/ treated at Asheville Mission Hospital for a contusion of the left inferior frontal lobe, occipital scalp hematoma, &/ right forehead hematoma &/ laceration.

13.) While housed in New River Valley Regional Jail (N.R.V.R.J.), Dublin, Virginia in September 2016, Plaintiff experienced headaches

& articulated mental health issues, prompting the notification of the medical staff there at NRVRJ, of Plaintiff's prior diagnosis.

14.) Upon information & belief, as early as 1998, the link between Traumatic Brain Injuries (T.B.I) & cognitive, emotional, & behavioral problems prisoners suffer had been established by the National Institutes of Health (N.I.H.). Several state Departments of Correction have authored studies regarding the correlation between T.B.I, & criminal behavior resulting in incarceration. Causation has been shown, & is now accepted as a part of factual science.

15.) Upon information & belief, various studies have been undertaken by state's DOCs, which show an increased need for screening, to take previous head injuries into account when planning treatment programs for offenders, as well as off-set negative impacts to prison management & prisoner safety. Colorado & Minnesota are among the states that have begun to implement such procedures.

Peter Klinkhammer, Associate Director of Services at the Brain Injury Association of Minnesota poignantly expressed; "If we don't help individuals, specifically, who have significant brain injuries that have impacted their criminal behavior, the we're missing an opportunity to short-circuit a cycle." As of this writing, Virginia could not be found among the states who have adopted similar screening & support procedures.

16.) Plaintiff was subsequently sentenced in his criminal case out of Floyd County Court & in February of 2018, Plaintiff was sent to Bland Correctional Center (B.C.C) for receiving. BCC was also notified of

Plaintiff's medical record but did nothing to pursue any medical treatment.

17.) Plaintiff was sent to Pocahontas State Correctional Center (PSCC) in March 2018 & Plaintiff informed the medical staff at the initial evaluation & records review of his medical history.

18.) In June/July of 2019, Plaintiff received a 17 page Neuro-psychological Evaluation Report conducted by Scott D. Bender, Ph.D., ABPP-CN, Institute of Law, Psychiatry, & Public Policy, (attached as 'example A'), in support of Plaintiff's petition for habeas corpus. Plaintiff presented that report to Mr. Murphy, Psychologist Senior at PSCC during one of their meetings. Mr. Murphy read through portions, but was disinclined, & decided against adding it to Plaintiff's DOC mental health record.

19.) On April 8 2019, Ralph Brown, M.D., specialist in the field of medicine dedicated to neuro-trauma treatment, issued an affidavit diagnosing Plaintiff as having serious mental & emotional impairments that were caused or exacerbated by the T.B.I he suffered in 2011. Dr. Brown based his diagnosis on Plaintiff's medical records from Mission Hospital, & several years of observations prior to Plaintiff's incarceration. (Affidavit attached as exhibit 'B')

20.) Dr. Brown, in his diagnosis, averred that Plaintiff suffered from a bilateral subdural hematoma (SDH), which involves bleeding into the linings of his brain, & that this was an extremely severe brain injury.

21.) Plaintiff had previously reported to the medical staff at NRVRJ, BCC, & PSCC, that he was experiencing headaches, light, & sound sensitivity, but according to Dr. Brown's affidavit, those are only some of the symptoms. There are cognitive symptoms as well, including great anxiety, concentration problems & intensive mood swings among them. There also exists the possibility of damages at a microscopic level, including axon retraction bulbs & axon disruption, the literal tearing of brain tissue. Dr. Brown emphasized that this is enough to cause fatality. M.R.I scans show Plaintiff suffered AT LEAST a severe T.B.I, & likely worse. Dr. Brown stated a full evaluation should be made.

22.) Plaintiff submitted several sick call requests & filed several grievances, requesting that he be evaluated by Dr. Brown, in an effort to address, & alleviate, the constant headaches, heightened agitations, light, & sound sensitivities. Upon information & belief, staff did not contact Dr. Brown, nor did staff pursue any research into a known issue, & the documented, readily available medical science.

23.) On information & belief, when a prisoner files a grievance, the grievance staff calls the matter to the attention of those individuals responsible for the matter that the grievance concerns.

## V  EXHAUSTION OF ADMINISTRATIVE REMEDIES

24.) Plaintiff Annarelli used the prisoner grievance procedure available at Pocahontas State Correction Center attempting to solve the problem (exhibit C) Plaintiff has exhausted these remedies with respect to all claims & defendants.

## VI  LEGAL CLAIMS

25.) Plaintiff Annarelli does reallege & incorporate by reference paragraphs 1 - 24

26.) The deliberate indifference to medical needs violated plaintiff Annarelli's rights & constituted cruel & unusual punishment under the 8th amendment to the United States Constitution, & a due process violation under the Fourteenth Amendment to the United States Constitution.

27.) The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been & will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory & injunctive relief which plaintiff seeks.

## VII  PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgement granting plaintiff:

28.) Granting Plaintiff Annarelli a declaration that the acts & omissions described herein violate his rights under the Constitution & laws of the United States, and

29.) A preliminary & permanent injunction ordering defendants Mullins, Murphy, & Yates, to promptly & immediately communicate with Dr. Brown, set an appointment with & transport Mr. Annarelli to any & all medical evaluations suggested by & required by Dr. Brown as needed to secure the well being, safety & health of Plaintiff Annarelli, and

30.) Granting Plaintiff Annarelli compensatory damages in the amount of $10,000.00 against each defendant, jointly & severally.

31.) Plaintiff Annarelli seeks punitive damages in the amount of $500,000.00. Plaintiff Annarelli seeks these damages against defendants Mullins, Murphy, & Yates, jointly & severally.

32.) Plaintiff also seeks a jury trial on all issues triable by jury, and

33.) Plaintiff also seeks recovery of his costs in this suit, and

34.) Any additional relief this court deems just, proper, & equitable.

Dated: April 20 2024

Respectfully submitted,

*[signature]*

David J. Annarelli
#1853637    Delta 119-B
Pocahontas State Correction Center
P.O. Box 518
Pocahontas, VA. 24635
Pro-Se Plaintiff

## VERIFICATION

I have read the foregoing complaint & hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true & correct.

Executed at Pocahontas, Virginia on April 20 2020

*[signature]*
David J. Annarelli

David T Annarelli
853637  D-119
Pocahontas State Correction Ctr.
PO Box 518
Pocahontas, VA. 24635



Clerk U.S. District
210 Franklin Road,
Suite 540
Roanoke, VA 24011




U.S. POSTAGE PAID
FCM LG ENV
HAVERFORD, PA
19041
MAY 01, 20
AMOUNT
**$0.10**
R2305M145288-5

Court
SW

2208