IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVID J. ANNARELLI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20-cv-00261 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD W. CLARKE, *et al.*, | ) | By:  Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

David J. Annarelli ("Annarelli" or "Plaintiff") is a Virginia inmate incarcerated at Pocahontas State Correctional Center ("PSCC"). Annarelli, proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against eight Defendants: Harold W. Clarke, Director of the Virginia Department of Corrections ("VDOC"); Kevin Punturi, Warden of PSCC; Dr. Mullins, M.D., a physician at PSCC; M. Murphy, Senior Psychologist at PSCC; S. Yates, Health Authority of PSCC; T. Heffinger, ADA Coordinator of PSCC; C. Smalling, Grievance Coordinator of PSCC; and K. Crowder, Western Regional Ombudsman of PSCC (collectively, "Defendants"). Annarelli alleges denial of medical care in violation of the Eighth and Fourteenth Amendments, and seeks declaratory and injunctive relief, as well as compensatory and punitive damages. This matter is before the court on Defendants' motions to dismiss.[1] After reviewing the pleadings, the court concludes that Annarelli has stated colorable claims against all Defendants, and their motions to dismiss will be denied.

---

[1] Defendants Mullins and Murphy jointly filed a motion to dismiss (ECF No. 23), and the remaining Defendants jointly filed a separate motion to dismiss (ECF No. 25).

## I.

Annarelli alleges[2] that in 2011, prior to his incarceration at PSCC, he suffered a brain injury and was treated for a contusion of the left inferior frontal lobe, occipital scalp hematoma, right forehead hematoma, and laceration. Annarelli included with his complaint materials that describe the 2011 event that caused his brain injury, as well as other subsequent events that may have exacerbated the 2011 injury or caused additional injury to his brain.

According to a 2019 neuropsychological report from Scott D. Bender, Ph.D., Associate Professor & Board-Certified Clinical Neuropsychologist at the University of Virginia Institute of Law, Psychiatry and Public Policy ("the Bender Report"), Annarelli suffered a traumatic brain injury ("TBI") in 2011 when he jumped out of a moving car. (*See* Compl. Ex. A [ECF No. 1-1.) After the accident, Annarelli suffered severe headaches and possibly behavioral changes. He further alleges that he suffers from constant headaches, light and sound sensitivities, great anxiety, concentration problems, intensive mood swings, heightened agitations, inability to read and understand social cues, monocular blindness, and "other issues," as well as several chronic conditions related to the TBI, including chronic pain. Annarelli alleges that from the beginning of his incarceration with VDOC in 2018,[3] he has sought treatment in the VDOC facilities in which he has been housed—including the Bland Correctional Center ("BCC") (VDOC's receiving facility) and PSCC—for the ongoing after-effects of his brain injury.

---

[2] The facts are taken from Annarelli's *pro se* complaint (ECF No. 1) and, at this stage, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Before entering the custody of VDOC in February 2018, Annarelli was jailed at the New River Valley Regional Jail ("NRVRJ") beginning in September 2016. Annarelli alleges he informed NRVRJ of his condition. But NRVRJ is not a VDOC facility, and none of the Defendants are NRVRJ officials.

The Bender Report also states that Annarelli may have suffered a concussion on September 24, 2016, just hours before being arrested for the offense for which he is now incarcerated.[4] In a grievance attached to his complaint, Annarelli describes a further, misdiagnosed head injury that he received while incarcerated at PSCC when he "was attacked by a cell mate, yanked from the top bunk, landing head first on concrete with enough force to render [him] immediately unconscious" in January 2019. (Compl. Ex.3 pg. 19 [ECF No. 1-3].)

Annarelli alleges that he informed Murphy of the January 2019 incident, but that Murphy did not provide an appropriate response, such as arranging for a transfer to a facility better equipped to handle Annarelli's disabilities and/or his brain-injury related. Annarelli also suggests that the 2016 and 2019 head injuries exacerbated the 2011 TBI.

Annarelli also submitted the April 8, 2019 Declaration of Ralph Brown, M.D. ("Brown Declaration"). Brown practices in the field of neurotrauma treatment at the rehabilitation center for Carilion Clinic, treating trauma and brain-injury patients in Southwestern Virginia. Although Brown is not Annarelli's treating physician, Brown knows Annarelli through their mutual participation in a band—which met weekly for practice sessions—and other social interactions. Brown reviewed Annarelli's hospital records from the 2011 brain injury and has offered his observations regarding Annarelli's behavioral issues and how Annarelli's brain injury may have caused certain behaviors. Given their inclusion with Annarelli's complaint, the court interprets those opinions as factual assertions in support of Annarelli's claims.

In addition to issues around treatment for his head/brain injuries, Annarelli alleges extensive mental health issues that are considered disabilities under the Americans with

---

[4] In 2016, Annarelli was convicted of malicious wounding of a police officer.

Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Annarelli alleges serious mental and emotional impairments that were caused or exacerbated by his TBIs. The Bender Report and the Brown Declaration both describe developmental and/or emotional disorders in Annarelli's background.

Annarelli alleges that PSCC has failed to investigate, treat, and/or accommodate properly his brain injuries and related (or unrelated) mental-health disabilities. Annarelli claims that Defendants Mullins and Murphy summarily discounted his efforts to obtain treatment and/or transfer to a better-equipped facility. Annarelli also alleges that Yates delayed obtaining paperwork relating to Annarelli's medical records for 15 months, and that Heffinger, Smalling, and Crowder have failed in their roles of ADA Coordinator, Grievance Counselor, and Regional Ombudsman. Clarke (as VDOC Director) and Punteri (as PSCC Warden) are alleged to have supervisory responsibilities.

Annarelli has asked PSCC to arrange to have Brown evaluate Annarelli, and Annarelli has filed grievances seeking such evaluation. His present lawsuit seeks to have Defendants arrange for Brown to evaluate Annarelli and, presumably, to direct Annarelli's treatment.

Annarelli alleges the VDOC receiving facility, BCC, was notified of Annarelli's history of TBIs but did nothing to pursue any medical treatment. After being transferred to PSCC, Annarelli alleges he informed PSCC of and sought treatment for his TBI, including through grievances and in meetings with Murphy. The grievances Annarelli attached to his complaint demonstrate efforts to obtain treatment for his head injuries, his ongoing headaches, and other symptoms, as well as other related issues, such as a request for assignment to a single cell.

Annarelli alleges he submitted the Bender Report to Defendant Murphy, but Murphy decided against adding the Bender Report to Annarelli's VDOC mental-health record. Annarelli has also sought transfer to Deerfields, a facility he believes is better equipped to address his medical needs, but he alleges that Murphy did not support his attempt to transfer to Deerfields.

In their motions to dismiss, Defendants argue that Annarelli is receiving psychiatric treatment from Murphy, although Annarelli maintains that his serious medical condition is not being treated. Annarelli included with his complaint a publication from the Centers for Disease Control ("CDC") that suggests methods for treating TBI, as well as other articles on TBIs and their treatment. Annarelli cites to screening and support procedures for prisoners with TBI that have been adopted by prisons in Colorado and Minnesota.

## II.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 127, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim.

*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

**III**.

"[T]he State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated." *West v. Atkins*, 487 U.S. 42, 54 (1988).

In order to state an Eighth Amendment claim based on the denial of medical care, a plaintiff must demonstrate that the defendants' actions (or failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This requires a showing of two elements. First, the plaintiff must provide evidence showing that he suffered from an objectively serious medical need. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A serious medical need may also be shown by a condition that, "absent treatment, could result in further significant injury or the unnecessary and wanton infliction of pain; [] a reasonable doctor or patient would find important and worthy of comment or treatment; [] significantly (and adversely) affect[s] each of the Plaintiffs' daily activities; or [] involve[s] the existence of chronic and substantial pain." *Scott v. Clarke*, 64 F. Supp. 3d 813, 822 (W.D. Va. 2014) (citations omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (explaining that the requirement that a particular medical must be "serious" stems from the fact that "society does not expect that prisoners will have unqualified access to health care").

Second, to show deliberate indifference, the plaintiff must show that the defendants were subjectively aware of the need for medical attention, but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Instead, the defendants' disregard for a plaintiff's medical condition must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience

or to be intolerable to fundamental fairness." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013). "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. But a medical provider is not deliberately indifferent simply because the provider chooses to treat an ailment by means other than the prisoner's preferred method. *Hixson v. Moran*, 1 F.4th 297, 302–03 (4th Cir. 2021); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

## IV.

Annarelli's submissions, as a whole, offer enough well-pleaded factual allegations to support his Eighth Amendment claim for deliberate indifference to his serious medical needs. Annarelli has alleged several head traumas, the most recent having occurred while he was incarcerated at PSCC. He has also alleged that his symptoms include chronic pain, constant headaches, light and sound sensitivities, anxiety, concentration problems, intensive mood swings, heightened agitations, an inability to read and understand social cues, and monocular blindness. These conditions, taken as a whole, are of such magnitude as to constitute serious medical needs. *See Scott*, 84 F. Supp. 3d at 823–25.

Annarelli further alleges that Defendants were aware of Annarelli's need for medical attention, but they did not respond to his needs or ensure appropriate care. Annarelli's allegations therefore sufficiently meet the two-part test set forth in *Estelle* to survive a motion to dismiss. *See Estelle*, 429 U.S. at 106.

But the injunctive remedy Annarelli suggests—for the court to order that Annarelli be evaluated (and, presumably, his treatment be supervised) by his preferred provider, Dr. Brown—may not be available. Inmates are not entitled to their preferred course of treatment.

*See Hixson*, 1 F.4th at 303; *Wright*, 766 F.2d at 849. At this stage of the proceedings, however, Annarelli has sufficiently stated a redressable claim seeking constitutionally adequate medical care for his conditions. The court need not "address the nature of the appropriate relief" in deciding whether Annarelli's claims survive Defendants' motions to dismiss. *Charles v. Front Royal Volunteer Fire & Rescue Dept.*, 21 F. Supp. 3d 620, 629 (W. D. Va. 2014). Annarelli "has pled his claim with sufficient factual specificity to show that, if his allegations are true, he is entitled to some form of relief." *Id.* The court will therefore deny Defendants' motions to dismiss Annarelli's claim for violation of his Eighth Amendment rights.

## V.

The Supreme Court has made clear that "[i]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process [under the Fourteenth Amendment]." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). It is well-established that "deliberate indifference to an inmate's medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104. Therefore, if a plaintiff "can properly invoke the Eighth Amendment to challenge issues relating to his medical care," then "[t]he very viability of his Eighth Amendment claims means that his substantive due process claims are without merit[.]" *Cooleen v. Lamanna*, 248 Fed. Appx. 357,

362 (3d Cir. 2006). Conversely, if and to the extent a plaintiff's claim for inadequate medical care do not fall within the ambit of the Eighth Amendment, the plaintiff may nevertheless have a claim for a Fourteenth Amendment substantive due process violation. *See Farabee v. Clarke*, 967 F.3d 380, 394 (4th Cir. 2020) (holding that an inmate stated a substantive due process claim where state officials denied him the treatment recommended by two psychologists and a psychiatrist).

Annarelli has sufficiently pled a claim for a violation of his Eighth Amendment rights against at least some of the Defendants (*i.e.*, Mullins and Murphy). To the extent his claims against the remaining Defendants do not fall within the ambit of the Eighth Amendment, those claims may be encompassed by Annarelli's claim for violation of his Fourteenth Amendment right to substantive due process. *See Farabee*, 967 F.3d at 394 (noting that the Fourteenth Amendment's due process protections afford prisoners a right to adequate medical care, and that failure to meet that right may comprise a due process violation). The court will therefore deny Defendants' motions to dismiss Annarelli's claim for violation of his Fourteenth Amendment rights.

## VI.

In conclusion, the court will deny Defendants' motions to dismiss Annarelli's claims against them.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Annarelli and all counsel of record.

**ENTERED** this 30thday of September, 2021.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE